UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

───────────────────────────────────────

GUILLERMO MATEO,

                     Petitioner,        04 Cr. 1229 (JGK)
                                     07 Civ. 6054 (JGK)
       - against -
                                  OPINION AND ORDER

UNITED STATES OF AMERICA,

                     Respondent.

───────────────────────────────────────

JOHN G. KOELTL, District Judge:

The petitioner Guillermo Mateo moves pursuant to 28 U.S.C. § 2255 to vacate and set aside his conviction and sentence on the grounds that he received ineffective assistance of counsel. The petitioner also asks the Court to recommend to the Bureau of Prisons that the petitioner be admitted to a drug abuse treatment program. Finally, the petitioner has filed a separate motion to correct the Pre-Sentence Report to reflect that he is a "national" of the United States. Because the petition and the Government's response raised disputed issues of fact, the Court appointed counsel for the petitioner and held an evidentiary hearing on October 16, 2007, at which the petitioner and his former counsel, Joyce London, testified. See Graham v. Portuondo, No. 04-1315-PR, 2007 WL 2850293 (2d Cir. Oct. 3, 2007) (per curiam). Based on all of the papers submitted to the Court and this Court's evaluation of the testimony at the

evidentiary hearing, the Court makes the following findings of fact and reaches the following conclusions of law.

I.

On May 19, 2006, the petitioner pleaded guilty to a single count indictment charging him with conspiring in violation of 21 U.S.C. § 846 to distribute and possess with intent to distribute five kilograms and more of cocaine in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(A).  The plea was made pursuant to a plea agreement that the petitioner and his counsel, Ms. London, signed on May 19, 2006.  In the plea agreement, the petitioner specifically agreed that the applicable offense level under the November 1, 2004 United States Sentencing Guidelines ("USSG") was 29, and his Criminal History Category was I.  This yielded a Sentencing Guidelines Range of 87 to 108 months.  The offense level was based on an agreement that the amount of cocaine that the defendant conspired to distribute and possess with intent to distribute was more than 15 kilograms, but less than 50 kilograms, which yielded an offense level of 34 under USSG § 2D1.1(c)(3).  The plea agreement also provided for a two-level reduction in the petitioner's base offense level pursuant to USSG § 2D1.1(b)(7) based on the petitioner's qualification for the "safety valve," which also permitted the petitioner to be sentenced pursuant to 18 U.S.C. § 3553(f) to a sentence

2

irrespective of the ten-year mandatory minimum sentence

otherwise required for the offense to which the defendant was

pleading guilty.  The parties also agreed that the petitioner's

offense level should be reduced by three levels pursuant to USSG

§ 3E1.1 because of the defendant's timely acceptance of

responsibility.  Based on an offense level of 29 and a Criminal

History category of I, the petitioner's Stipulated Guidelines

Range was 87 to 108 months.  The plea agreement also provided

that neither the petitioner nor the Government would seek a

sentence outside the Stipulated Guidelines Range and that a

sentence within the Stipulated Guidelines Range would constitute

a reasonable sentence.

The plea agreement provided a waiver of the right to

appeal.  It explicitly stated: "It is agreed . . . that the

defendant will not file a direct appeal, nor litigate under

Title 28, United States Code, Section 2255 and/or Section 2241,

any sentence within or below the Stipulated Guidelines Range of

87 to 108 months. . . ."  At the defendant's plea allocution,

the Court questioned the petitioner thoroughly to assure that

the petitioner was pleading guilty knowingly and voluntarily,

that he was fully aware of all the constitutional rights he was

waiving by entering a plea of guilty and not going to trial,

and that there was an independent factual basis for his plea.

The Court also examined the petitioner with respect to the plea

agreement to assure that he understood it and had entered into

it knowingly and voluntarily.  The Court specifically ensured

that the petitioner was aware that he was giving up his right to

appeal or challenge in any habeas corpus proceeding any sentence

within or below the Stipulated Guidelines Range.  The petitioner

stated under oath that he was aware of that fact:

> THE COURT:  The plea agreement contains a provision that says that the defendant will not file a direct appeal nor litigate under Title 28 United States Code, Section 2255 or Section 2241, any sentence within or below the stipulated guideline range of 87 to 108 months.  So, Mr. Mateo, do you understand that you have given up or waived your right to appeal or otherwise challenge or litigate in any habeas corpus proceeding or any other proceeding any sentence within the range of 87 to 108 months or any sentence below that range?  Do you understand that?
> THE DEFENDANT:  Yes, your Honor.
> THE COURT:  Put another way, do you understand that if the court sentenced you to any sentence of anywhere between 87 to 108 months or below that sentence, you have given up or waived your right to appeal or otherwise challenge in any proceeding any such sentence?  Do you understand that?
> THE DEFENDANT:  Yes, your Honor.

(Plea Tr. 15, May 19, 2006.)

On August 25, 2006, the Court sentenced the petitioner to a

sentence of 87 months imprisonment, a term of supervised release

of three years and a $100 special assessment.[1]  The Court

reviewed with the petitioner that a defendant who pleads guilty

generally has the right to appeal the sentence, but the

petitioner had waived the right to appeal as part of the plea

---

[1] The March 27, 2006 USSG in effect at the time of sentencing were identical to the November 1, 2004 USSG used in the plea agreement, except USSG § 2D1.1(b)(7) was renumbered § 2D1.1(b)(9).

agreement and the Court had ensured at the time the petitioner
entered his plea that the petitioner understood that he was
giving up his right to appeal.  The Court explained that the
petitioner should discuss this issue with his lawyer so that he
was fully aware of all of his rights.  The petitioner
acknowledged that he understood. (Sentencing Tr. 14, August 25,
2006.)[2]

The judgment of conviction was entered on August 31, 2006.
No notice of appeal was filed.

On June 8, 2007, the current motion pursuant to 28 U.S.C.
§ 2255 was filed with the Pro Se Office of this Court.[3]  The
petitioner argues that he received ineffective assistance of
counsel for two reasons.  First, he claims that he requested his
counsel to file a notice of appeal and his counsel failed to do
so.  Second, he claims that his counsel failed to object and
argue that the amount of the drugs attributed to him should have
been less than 20 kilograms of cocaine.  The petitioner also
seeks to have the Court make a recommendation to the Bureau of
Prisons that the petitioner be admitted to a substance abuse
treatment program while in prison.

---

[2] The sentencing transcript appears to be incorrectly dated September 25,
2006.
[3] The petition is dated May 30, 2007.  There is no dispute that the petition
is timely.  See 28 U.S.C. § 2255 (one-year statute of limitations).

II.

A.

To establish a claim of ineffective assistance of counsel, the petitioner must show both that: (1) his counsel's performance was deficient in that it was objectively unreasonable under professional standards prevailing at the time, and (2) that his counsel's deficient performance was prejudicial to his case.  See Strickland v. Washington, 466 U.S. 668, 687 (1984); Bunkley v. Meachum, 68 F.3d 1518, 1521 (2d Cir. 1995).

The petitioner cannot meet the first prong of this test merely by showing that his counsel employed poor strategy or made a wrong decision.  Instead, the defendant must establish that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed. . . by the Sixth Amendment."  Strickland, 466 U.S. at 687.  In fact, there is a "strong presumption" that defense counsel's conduct fell within the broad spectrum of reasonable professional assistance, and a defendant bears the burden of proving "that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (citing Strickland, 466 U.S. at 688-89).

6

To meet the second prong of the <u>Strickland</u> test, the petitioner must show that "[t]here is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  <u>Strickland</u>, 466 U.S. at 694; <u>see also</u> <u>Salcedo v. United States</u>, No. 05 Civ. 1847, 2006 WL 2819661, at *2 (S.D.N.Y. Oct. 2, 2006); <u>Ramos v. United States</u>, No. 97 Civ. 2572, 1998 WL 230935, at *3 (S.D.N.Y. May 8, 1998).

Where a defendant challenges a guilty plea on the basis of alleged ineffective assistance of counsel, the defendant must show that, but for counsel's error, there is a reasonable probability that he would not have pleaded guilty.  <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985); <u>Tate v. Wood</u>, 963 F.2d 20, 23–24 (2d Cir. 1992).  In the context of sentencing, the petitioner must show that but for counsel's ineffectiveness, there is a reasonable probability that the sentence imposed would have been different.  <u>See</u> <u>United States v. Workman</u>, 110 F.3d 915, 920 (2d Cir. 1997).

The failure to file an appeal constitutes ineffective assistance of counsel without a showing of the merits of the appeal if a defendant asks counsel to file such an appeal.  <u>See</u> <u>Campusano v. United States</u>, 442 F.3d 770, 776-77 (2d Cir. 2006); <u>Garcia v. United States</u>, 278 F.3d 134, 137 (2d Cir. 2002);

Hernandez v. United States, 202 F.3d 486, 489 (2d Cir. 2000);

Restrepo v. Kelly, 178 F.3d 634, 641-42 (2d Cir. 1999).


                              B.

    While the petitioner asserts that he asked his counsel to

file an appeal and that she failed to do so, that allegation is

not credible.  Initially, in support of his petition, the

petitioner submitted an affidavit in which he swore as follows:

"That after I received the 87 months sentence stemming from the

wrongful drug quantity (20 kilogram), I instructed my counsel to

file a notice of appeal so that I could appeal and challenge the

wrongful amount of drugs attributed and used in determining my

base offense level for sentencing purposes. . . .  That my

counsel promised to file a notice of appeal, but didn't do so."

(Mateo Aff. ¶¶ 3, 4.)  The petitioner's counsel, Joyce London

submitted a responsive affidavit that more credibly denied that

the petitioner had asked her to file such a notice of appeal:

"To the best of my recollection, I was not instructed by Mr

Mateo to file a Notice of Appeal.  I am aware that Second

Circuit law, specifically, [Campusano] requires me to file a

Notice of Appeal on behalf of a client who so requests, even if

the Plea Agreement contains a waiver of appeal or even if I

believe that there are no appealable issues.  Accordingly, it is

my practice to file a Notice of Appeal when so instructed by a

client." (London Aff. ¶ 7.)  Plainly, it would have been a

simple task for Ms. London to have filed a notice of appeal if

the petitioner had instructed her to do so.

At the evidentiary hearing, the petitioner contradicted his

prior affidavit.  The petitioner testified that he was

dissatisfied with the amount of drugs that were included in the

stipulation in the plea agreement and that he informed his

attorney before he signed the plea agreement that he wanted to

appeal. (H'rg Tr. 9, Oct. 16, 2007.)  He explained that he did

not tell Ms. London on the sentencing date that he wanted to

appeal and that he had no further contact with Ms. London. (Id.)

He reiterated on cross examination: "After we talked about my

guilty plea, I didn't talk to her again -- I did not talk to her

again about that because my understanding was that we already

had the conversation over my appeal." (Id. at 13.)  The

petitioner's testimony that he asked his attorney to appeal

prior to the time that he entered his guilty plea is not

credible in view of the fact that it is totally absent from his

affidavit and indeed inconsistent with his affidavit.  Moreover,

the petitioner's testimony is not credible in view of the

detailed explanations that the Court gave to the defendant to

assure that at the time of his guilty plea the petitioner

understood that he was in fact giving up or waiving his right to

appeal, and the petitioner's sworn responses that he understood the Court's instructions.

On the other hand, Ms. London testified credibly that she had the plea agreement translated for the petitioner and that she explained to him that if the Court sentenced the petitioner within or below the stipulated guideline sentencing range, the petitioner would not have any issues on appeal. (Id. at 17.) She also testified categorically and credibly that the petitioner did not ask her at any time to file an appeal. (Id. at 18.)   She added that if the petitioner had asked her prior to the date of sentencing to file an appeal, she would have advised him that it was premature because he did not know what the sentence would be.   She also recalled talking to the petitioner after the sentencing and advising him that he had been sentenced at the lowest end of the guideline range and that there was nothing to appeal. (Id. at 18-19.)

In sum, there is no credible evidence that the petitioner asked his counsel to appeal and that she failed to do so. Rather, the evidence shows that the petitioner's counsel carefully explained to him the nature of the plea agreement, the restrictions on the right to appeal and the lack of any basis to appeal and that the petitioner did not ask his attorney to file an appeal.   Therefore, the petitioner's argument that his

counsel was ineffective for having failed to file a notice of appeal that he requested fails.

C.

The petitioner also argues that his counsel was ineffective for having failed to object to the amount of drugs attributed to the defendant in the Pre-Sentence Report, namely 20 kilograms of cocaine.  (Pre-Sentence Report ¶ 14.)  However, the petitioner has failed to show that his counsel's performance was objectively unreasonable in advising him in connection with entering into the plea agreement pursuant to which he agreed that the amount of cocaine involved in his offense was between 15 and 50 kilograms of cocaine.  As Ms. London explained in her affidavit, the Government refused to enter into an agreement with a lower amount of drugs, and expected to prove at any trial or hearing that the actual amount of cocaine involved in the offense was over 150 kilograms of cocaine.  The Government also argued that it could have obtained a leadership enhancement which would have imperiled the petitioner's ability to obtain safety valve treatment and could have resulted in the imposition of a mandatory minimum sentence.  (London Aff. ¶¶ 9-10.)  Ms. London correctly advised the petitioner that he could challenge the amount of the drugs at a sentencing hearing if he did not enter into the plea agreement, but he ran the risk that the

11

Government could prove the higher level of drugs and the role enhancement. (Id. at ¶ 12.) The petitioner, having been thoroughly advised of his options, elected to enter into the plea agreement. (Id. at ¶ 13.) There is nothing about the advice that his counsel provided that would support any hint of a claim of ineffective assistance of counsel. Moreover, after the petitioner had entered into a plea agreement that stipulated to the amount of the drugs involved in the offense, in accordance with which the petitioner was in fact sentenced, it would have been frivolous and wrong for the petitioner's counsel to have argued at sentencing that the amount of the drugs involved in the petitioner's offense was less than the amount stipulated in the plea agreement.

The petitioner has therefore failed to show that his counsel's representation was objectively unreasonable or that he suffered any prejudice. See Tucker v. Artuz, No. 99 Civ. 1914, 2003 WL 1846904, at *1 (S.D.N.Y. Apr. 9, 2003) (recommendation to plead guilty was "well within the range of tactical strategy that is left to the professional judgment of defense counsel"); see also Vasquez v. Filion, 210 F. Supp. 2d 194, 199 (E.D.N.Y. 2002) (rejecting claim of ineffective assistance of counsel in connection with advising the defendant to accept a guilty plea).

D.

The petitioner also requests the Court to recommend to the Bureau of Prisons that he be admitted to a drug treatment program while in prison.  The Court declines to make such a recommendation.  The defendant has failed to show that he has such a history of drug use that the resources of the Bureau of Prisons should be used to provide such a program to the petitioner.


III.

The petitioner has also filed a separate motion in which he seeks to amend the Pre-Sentence Report to reflect that he is a "national" of the United States rather than a "deportable alien."  The petitioner argues that because he applied for citizenship in August, 2000, he should be considered a "national of the United States."  The petitioner points out that under 8 U.S.C. § 1101, the term "national of the United States" means "(A) a citizen of the United States, or (B) a person who, though not a citizen of the United States, owes permanent allegiance to the United States."  The petitioner argues that a pending citizenship application is sufficient to establish that he owes permanent allegiance to the United States.

The application is denied.  First, there is nothing incorrect in the Pre-Sentence Report.  The Pre-Sentence

13

accurately describes the petitioner's citizenship as "Dominican Republic" and notes that he is a "Permanent resident."  The petitioner does not suggest that these facts are incorrect. Moreover, the premise of the petitioner's argument is incorrect. Even a manifestation of permanent allegiance to the United Sates is insufficient without a specific statutory basis to obtain United States nationality under 8 U.S.C. § 1101.  See Marquez-Almanzar v. INS, 418 F.3d 210, 218-19 (2d Cir. 2005).

The Court therefore denies the application to amend the Pre-Sentence Report.


CONCLUSION

The Court has considered all of the petitioner's arguments. To the extent not specifically addressed above, they are either moot or without merit.  The petitioner's motions are therefore **denied**.  Because the petitioner has failed to make a substantial showing of the denial of a constitutional right, the Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c).

The Clerk of the Court is directed to enter judgment dismissing the petition and denying the motion to amend the Pre-

Sentence Report and close the cases, 04 Cr. 1229 (JGK) and 07

Civ. 6054 (JGK).


SO ORDERED.

Dated:  New York, New York
        December 7, 2007

_____
           John G. Koeltl
     United States District Judge